DONALD R. HUENE and ANNETTE S. HUENE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huene v. Commissioner
Docket No. 29314-83.
United States Tax Court
T.C. Memo 1989-570; 1989 Tax Ct. Memo LEXIS 569; 58 T.C.M. (CCH) 456; T.C.M. (RIA) 89570; October 24, 1989. Donald R. Huene, pro se. Lowell T. Carruth, for petitioner Annette S. Huene. Rebecca T. Hill, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a $171,203 deficiency in petitioners' joint Federal income tax return for calendar year 1978. The issues for decision are whether petitioners' restricted "Form 872M" is valid to extend the period of assessment and to limit their determined deficiency to a maximum of $50.00, and if not, whether petitioners are estopped from asserting the statute of limitations as a defense against assessment. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners were residents of Fresno, Calif., at the time they filed their petition. On or around April 16, 1979, petitioners filed their joint individual Federal income tax return for calendar *571 year 1978 with the office of the Internal Revenue Service, Fresno Service Center, Fresno, Calif.
Both petitioners are well educated. Mrs. Huene holds a bachelor of arts degree in chemistry from Cornell University and completed one year of graduate work in biochemistry at the University of Toronto. Dr. Huene is an orthopedic surgeon. He obtained his medical degree from the University of Rochester, completed a two-year internship in surgery at Stanford Medical School, and completed a three-year orthopedic residency at the University of Rochester. He was a flight surgeon in the United States Navy for three years and he taught at Stanford Medical School until 1987. During the course of his medical career, Dr. Huene has invented various medical devices, and continues today to give lectures on their use. Dr. Huene is also well acquainted with and knowledgeable of the procedures of this Court and the Internal Revenue Service (IRS). Petitioners have been involved in numerous tax matters before this and other courts since around 1972. During such time they have filed approximately seven petitions in this Court regarding at least eight taxable years. Consents to extend the statute *572 of limitations were solicited for at least three of these years. Petitioners signed a consent for 1974. However, they refused to sign the consent requested for 1977 and, as a result, respondent immediately issued a statutory notice of deficiency for $128,000. In the fall of 1981, agents for respondent solicited petitioners' signatures on two copies of Form 872A, Special Consent to Extend the Time to Assess Tax, for 1978. Form 872A is an IRS form that allows the period of limitations to be extended beyond the normal three-year period. Sec. 6501. [1] It is an unrestricted, open-ended consent. This means that it does not restrict the issues that the IRS can further investigate, nor does it limit the length of time in which it can do so. Instead, of executing the consents, Dr. Huene threw them away. Again, in December of 1981, respondent sent petitioners additional computer-generated Forms 872A for 1978. Transmitted with these Forms 872A was a cover letter requesting petitioners *573 to sign the consents. The letter instructed petitioners to read the instructions provided, sign, date, and return all copies of Form 872A, upon which an executed copy would be returned to them. Dr. Huene knew that if a consent was not signed, respondent would immediately issue his statutory notice of deficiency. Instead of signing the Forms 872A received from the IRS, Dr. Huene typed, on his own computer (a Vydec 1200 word processor with a Daisy wheel printer), an entirely new consent. See Appendix A-1. Prior to Dr. Huene's creation of his own consent form, he took the opportunity to discuss contract law with several patients who were also attorneys. Dr. Huene's interest in contract law dealt mainly with "forms." He asked them generally about contract law and what their opinions were with respect to forms. He was informed that he could not send the same form to a person if it contained the same numbering, because that person would assume that the form received was the same form that had been sent. He was also informed that if any changes were made, that the paragraph in which such changes occurred should be initialed in the left-hand margin. Dr. Huene did not ask how many changes *574 would be necessary to a form in order to make it a different form, nor whether placing an "M" in place of an "A" next to the form number would suffice to make the form a different form. Dr. Huene read IRS Publication 1035 before he created his own consent form. Publication 1035 explains to taxpayers what options are available to them with respect to signing a consent. It also explains what types of consents are available. He also contacted the Service Center in Fresno, California, and spoke with a problem-resolution officer regarding limiting the extension. He was informed that he could limit the extension to a specific type and was told to type in the limits he wanted on the Form 872A. After Dr. Huene completed all his research, and even though he was not a good typist, he sat down at his Vydec word processor and, using Form 872A as the basis for his form, proceeded to create a nearly exact duplicate form which he dubbed "872M". See Appendix A. The Vydec word processor contains various daisy wheels that are used on the printer to produce various styles of print. Dr. Huene sought and purchased a particular Daisy wheel that produced print "similar" to the type print on Form *575 872A. He chose this particular wheel because he wanted "Form 872M's" print to be "similar" to that of Form 872A. He also selected the spacing on the Vydec to be "similar" to that on Form 872A, set the margins so that the same number of letters per line that appeared on Form 872A would be produced on his document, single spaced the document and used all capital letters, as does Form 872A, and printed his form on white paper. Form 872A is printed on white computer paper which has a slightly different texture than the white paper Dr. Huene used to prepare Form 872M. However, the difference is not significant since the IRS is required to make photostatic copies of signed Forms 872A's when taxpayers fail to send back both original forms. As such, the IRS frequently handles different textures of paper upon which their Forms 872A are "printed." Although Dr. Huene did not know what the digits "121581-0918" contained in the upper right-hand corner of Form 872A meant, he placed those same numbers on his document in the same upper right-hand corner. The digits "121581" mean that the consent was computer-generated by the IRS on December 15, 1981. The digits "0918" mean that the Form *576 872A for the Huenes was the 918th consent printed by the computer for the San Francisco District on December 15, 1981. These digits enable IRS employees to track each consent by number. Dr. Huene also centered "DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE" across the top of his document, because that is what was at the top of Form 872A that was sent to him. After attending to all the preliminary matters, Dr. Huene proceeded to copy word for word, line for line, Form 872A into his word processor. He even typed the "(S)" at the end of the words "taxpayer." However, he did make two changes on his document that differed from Form 872A. He excised the phrase: * * * HOWEVER, IF A NOTICE OF DEFICIENCY IS SENT TO THE TAXPAYER(S), THE TIME FOR ASSESSING THE TAX FOR THE PERIODS STATED IN THE NOTICE OF DEFICIENCY WILL BE FURTHER EXTENDED BY THE NUMBER OF DAYS THE ASSESSMENT WAS PREVIOUSLY PROHIBITED, PLUS 60 DAYS. * * * In its stead, Dr. Huene inserted the following: * * * HOWEVER, WHEN A NOTICE OF DEFICIENCY IS SENT TO THE TAXPAYER(S), THE TOTAL AMOUNT OF DEFICIENCY THAT CAN BE ASSESSED OR COLLECTED FROM TAXPAYER(S) SHALL BE THE AMOUNT OF THE DETERMINED DEFICIENCY OR THE *577 SUM OF FIFTY DOLLARS, WHICHEVER IS THE LESSER AMOUNT. * * * He also excised the letter A next to "Form 872A" and inserted in its place the letter "M". Except for these two changes all other portions of Dr. Huene's document contained the exact same language, spacing, line endings, and punctuation as IRS Form 872A. See Appendix A-1. Dr. Huene also created 3 lines of asterisks that looked very similar to those on Form 872A. He placed them at angles on the bottom of the first page of his newly created consent. Form 872A also contains asterisk marks placed at angles on the bottom of its first page. Petitioners initialed the paragraph in which the textual change appeared. Mrs. Huene placed her initials on the document because Dr. Huene told her that they were required when there were two pages in a document. However, the initials were placed in the upper, left-hand margin at the top of the first paragraph, at least five lines above the actual alteration. No similar initials were placed next to or anywhere near the "M" that Dr. Huene had inserted in lieu of the "A" in Form 872A. There were no other visible markings on the face of this form that would put anyone on notice *578 that a change in the language contained in Form 872A had been made. After completion, Form 872M looks so much like Form 872A that it would require extensive scrutiny of the entire Form to detect the differences between them. (Compare Appendix A-1 with A-2, the Form 872 mailed to petitioners for a prior year.) Dr. Huene deliberately created Form 872M to look so much like Form 872A to prevent its rejection by the IRS's optical reader. On January 4, 1982, petitioners signed and mailed their executed Form 872M to the I.R.S. However, Mrs. Huene does not remember whether or not she ever read Form 872M. On January 7, 1982, Form 872M was received by the Audit Division of the District Director at San Francisco, Calif. At this time Lydia Gaughan was projects coordinator in charge of consents in the San Francisco office. It was her job to obtain consents from taxpayers on those cases in her jurisdiction where the statute of limitations was about to run. During January 1982, the following procedures were utilized in the San Francisco office when processing signed Form 872A consents. Upon initial receipt office clerks would open the envelopes containing the consent form, check to make *579 sure both copies of the consent were enclosed, and date stamp them. If only one copy had been returned, a photostatic copy would be made and stamped. They would then associate the consents with the appropriate taxpayer's return. It was not the clerk's duty to inspect the consents; rather, they would turn all stamped consents over to revenue agents. Upon receipt, the revenue agents would review the consents and separate out those containing material modifications. The unmodified consents would then be checked to make sure that the consent had been sent to the correct taxpayer, that the correct taxpayer had signed the consents, that all taxpayers required to sign had signed, and that the correct taxable year appeared on the form. An agent would also make sure that the statute of limitations was still open at this point, if prior consents had been obtained. If no prior consents had been obtained, the consents would be further processed. The revenue agent would also recheck to make sure that the form was unmodified as to the date and/or issues. Upon completion of this review, the agent would send the unmodified Forms 872A to the Chief's office for signature. When petitioners' *580 Form 872M was received, Ms. Kathryn Koehler was Chief, Examination Support Staff, Internal Revenue Service, in San Francisco. It was her responsibility to execute, on behalf of respondent, consents to extend the statute of limitations. Upon receipt of the consents, Ms. Koehler would recheck all items that the revenue agents had previously verified. If no modifications were found, Ms. Koehler would sign the consent and send them to a second revenue agent for a final review. This agent would check again for the proper signatures and correct years and verify that no modifications as to date or issue appeared anywhere on the consent. After this final review the executed consents would be separated. One would be stapled to the first page of the appropriate taxpayer's return and the other consent would be returned to the taxpayer. The consents containing modifications would be processed as follows. If the modification was viewed by the revenue agent as a request from the taxpayer to restrict the consent in any way, the agent would contact the taxpayer and ask for a written request for a restricted consent. The taxpayer's written request could contain any restrictions that the taxpayer *581 wanted to include. If the IRS approved of the taxpayer's request, a new, manually-prepared consent would be sent to the taxpayer after the language contained in such consent had been approved by District Counsel. These restricted consents were prepared on green paper, unlike the white computer paper used to generate all Forms 872A. Normally about 20 percent of all Forms 872A's sent out were returned containing some type of modification. Typical modifications consisted of restricting the extension of the statute of limitations to a particular future date, limiting the issues to which the taxpayer would grant an unlimited extension, or containing restrictions as to both date and issues. Most modifications or changes to the Forms 872A were written on the consent in pen. However, some were typewritten in the empty spaces on the consent. During the week that petitioners' Form 872M was received in the San Francisco office, 252 other Forms 872A were being processed. Also, during this time the only consents that were received and processed in the office were Forms 872A, and therefore, there was no reason to pay close attention to verify that the Form was an 872A. Petitioners' Form *582 872M was processed as an unmodified Form 872A consent because none of respondent's agents discovered that petitioners' form had been modified. On January 15, 1982, Ms. Koehler signed the Form 872M unaware that it was not Form 872A. Had she known that the form was not the IRS's unrestricted Form 872A she would not have signed it. The IRS has no forms labeled "Form 872M." Dr. Huene knew this. On or about January 15, 1982, three months before the normal period of limitations was to expire, a copy of the executed Form 872M was mailed to petitioners by respondent's agent. The cover letter accompanying the copy stated, in pertinent part: "Enclosed is a copy of the above consent for your records. It extends to the date shown the time in which we may assess tax for this period." The language "the above consent" refers to the "Consent Form Number" located in the upper right-hand side of the letter which the agent for respondent had designated as "872A". See Appendix B. Dr. Huene did not expect the IRS to knowingly sign a restricted form, since he was aware that his potential deficiency was well in excess of $50.00. Nevertheless, after he received the executed copy he never told *583 any representative of the IRS, either orally or in writing, that the form he had created, and they had signed, was not IRS Form 872A. Instead Dr. Huene remained silent, aware of the fact that the IRS employees mistakenly believed they had executed their own unrestricted Form 872A, as evidenced by their cover letter. In the summer of 1982, Lydia Gaughan was manually comparing a computer-generated list of all executed consents with the appropriate information contained on the taxpayers' return. Since the IRS had four forms bearing the number 872, Ms. Gaughan was verifying that the form that the computer printout listed as having been sent and signed by the taxpayers was the one attached to the taxpayers' return. When she came across petitioners' file she compared the form numbers and noticed that a Form 872M rather than a Form 872A had been executed. Nothing else about Form 872M alerted her to the fact that it was not Form 872A. Even though petitioners had initialed the upper left-hand margin of their form, Ms. Gaughan was not put on notice that any changes had been made in the language, since no visible markings were made within the text. Ms. Gaughan has never seen initials *584 placed in the margin of a form where there were no visible changes made to its language. At the time Ms. Gaughan discovered that petitioners had not signed Form 872A, the normal period of limitations for petitioners' calendar year 1978 had already run. On September 21, 1983, respondent mailed petitioners a notice of deficiency for calendar year 1978. Petitioners timely filed their petition with this Court. Petitioners moved for summary judgment claiming that no genuine issues of material fact existed, and that they were entitled to a judgment as a matter of law to the effect that either (1) the Form 872M consent was valid and effectively limited their liability to a maximum of $50.00, or (2) if the consent form was invalid, then respondent's notice of deficiency was not timely because it was mailed after the expiration of the three-year limitation period which ended on April 15, 1982. In a Memorandum Opinion of the Court we denied petitioners' motion on the grounds that genuine issues of material fact remained relative to petitioners' intentions to mislead respondent and lull respondent into signing Form 872M, as well as with respect to whether petitioner's initials on *585 Form 872M put respondent on "notice" of the changes made by petitioners. Huene v. Commissioner,T.C. Memo. 1984-564. Pending the outcome of this case all issues set forth in the notice of deficiency have been settled by the parties. For the reasons set out below, we hold that Form 872M is invalid to extend the statute of limitations, and petitioners are equitably estopped to raise the statute of limitations as an affirmative defense. OPINION Admissibility of Annette Huene's Testimony
Before deciding the main issues in this case, we must address the following collateral issue raised by petitioners. Petitioner, Mrs. Huene, testified at trial as to statements made to her by her husband, petitioner Donald Huene, concerning the initialing of Form 872M. Petitioner objected to her testimony on the ground that the question called for a confidential communication between spouses. Mrs. Huene's testimony was admitted subject to her objection and petitioners presented argument on this issue in their briefs. Petitioners contend that the statements by Dr. Huene to his wife are privileged and as such improperly admitted. However, we do not rely upon her testimony *586 in establishing the fact that Dr. Huene told her to initial the first page "because you are supposed to do that if there are two pages to a document", and thus we need not decide whether the privilege applies. We rely instead on the testimony of Mr. Smith, a special agent with the Criminal Investigation Division of the Internal Revenue Service, that Mrs. Huene told him her husband made the above statement. Agent Smith's testimony was admitted into evidence over counsel's objection that it was hearsay. Petitioners did not argue this issue on brief, and we deem it waived. Even if it were not, the statement is admissible as an admission by a party under Rule 801(d)(2)(A) of the Federal Rules of Evidence.
Validity of Consent Agreement
The first issue for decision is whether "Form 872M" "Special Consent to Extend the Time to Assess Tax" is valid. If the agreement is valid, then the period of assessment of tax was extended and respondent's issuance of his statutory notice of deficiency to petitioners is timely. However, respondent's determined deficiency is restricted to a maximum of $50.00 unless the consent agreement can be reformed to read as an unrestricted Form 872A. If *587 the agreement is found invalid, then the statute of limitations bars the assessment of any deficiencies for calendar year 1978, unless petitioners are estopped from asserting the statute of limitations as a defense. We find, based upon all the facts and circumstances surrounding the creation and execution of Form 872M, that Dr. Huene's [2] conduct was tantamount to fraud. Fraud and equitable estoppel require us to examine the same elements. Thus, if we find the agreement invalid because respondent's signature was fraudulently induced, afortiori, we also find petitioners estopped to raise the statute of limitations as a defense. Respondent bears the burden of proof on both issues. Rule 142. The general rule set forth in section 6501(a) provides (with certain exceptions not material here) that any tax shall be assessed within three years after the taxpayer's return is filed. However, this three-year period may be extended if the taxpayer and the Secretary of the Treasury or his delegate execute a written agreement *588 to extend the period of limitation before it expires. Sec. 6501(c)(4). The purpose of a consent agreement is to allow the IRS an extended period in which to assess the tax. An agreement to extend the period of limitations on assessment is a unilateral waiver of a taxpayer's defense on such ground, not a contract, and as such, no consideration is required to give validity to the consent. Strange v. United States,282 U.S. 270 (1931); Kronish v. Commissioner,90 T.C. 684, 693 (1988); Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983); Tallal v. Commissioner,77 T.C. 1291, 1294 (1981), affd. on other issues 778 F.2d 275 (5th Cir. 1985). Nevertheless, since section 6501(c)(4) requires that the parties reach a written "agreement" regarding the extension, contract principles are significant. Piarulle v. Commissioner,supra.
The term "agreement" means a manifestation of mutual assent. 1 S. Williston, Contracts, sec. 2 (3d ed. 1957). "It is the objective manifestation of mutual assent as evidenced by the parties' overt acts, not the parties' secret intentions, that determines whether *589 the parties have made an agreement." Kronish v. Commissioner,90 T.C. at 693; Ribb v. Commissioner,T.C. Memo. 1988-379; see 1 S. Williston, Contracts, secs. 22 and 22A (3d ed. 1957); 1 Restatement, Contracts 2d, sec. 2 (comment b) (1981). Section 19(1), Restatement, Contracts 2d (1981), states that the manifestation of assent may be made by written or spoken words or by other acts or by a failure to act. 1 Restatement, Contracts 2d, sec. 19(1) (1981). Therefore, the mere act of signing a document is sufficient to establish manifestation of assent to the terms contained therein even if the party has not subjectively assented to the terms and even if the party believed the terms contained therein were otherwise. 1 Restatement, Contracts 2d, sec. 23 (comment e) (1981); Kronish v. Commissioner,supra;Ribb v. Commissioner,supra.
Section 19(2) Restatement, Contracts 2d, further provides that a party's conduct "is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." Section *590 163, Restatement, Contracts 2d (1981), applies to those situations where the above "unless" clause is not met. If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent. [1 Restatement, Contracts 2d, sec. 163 (1981), (see comment a); see 12 S. Williston, Contracts, sec. 1488 (3d ed. 1970).] This rule applies where, through no negligence on his part, the signer of an instrument has been led to believe, and does believe, that he is signing something of a different character from what he actually inscribes. In such circumstance he has not, in fact, assented to the obligation presented by the paper, and therefore, there is no manifestation of mutual assent and the paper is void. 1 S. Williston, Contracts, sec. 95A, p. 351 (3d ed. 1957); 12 S. Williston, Contracts, sec. 1488, p. 332 (3d ed. 1970); 1 Restatement, Contracts 2d, secs. 163 (comment a) and 164 (1981). This is known as misrepresentation or fraud in the *591 factum or execution of a contract. 1 Restatement, Contracts 2d, secs. 19(2) and 163 (1981); 12 S. Williston, Contracts, secs. 1487 and 1490 (3d ed. 1970). Here, petitioners and respondent contend, in their alternative arguments, that Form 872M is invalid since it lacked mutual assent. Petitioners allege that they had no intention of signing an unrestricted consent. Petitioners further allege that although they clearly manifested their intent to extend the statute of limitations, they did so on the condition that their liability for any determined deficiency be limited to a maximum of $50.00. Respondent contends that the Internal Revenue Service had no intention of signing such a restricted consent and would not have signed Form 872M had they noticed the restriction or noticed that Form 872M was not their Form 872A. However, as indicated above, it is not the parties' secret intents, but rather the objective manifestation of mutual assent evidenced by the parties' overt acts which determines whether they have made an agreement. Here, regardless of their secret intents, petitioners and respondent signed the same document. Absent fraud, material misrepresentation, or mistake *592 they are bound by its terms. It is clear from the evidence that Ms. Koehler intentionally signed a document she honestly and reasonably believed to be the IRS's unrestricted Form 872A. We believe that petitioners, as evidenced by their particular course of conduct, intended to deceive all of respondent's agents into believing that restricted "Form 872M" was actually IRS Form 872A, and thereby induced them into executing Form 872M. Therefore, we find Form 872M invalid as a result of petitioners' fraudulent conduct. The elements required for fraud [3] are: (1) a false representation; [4] either actual or implied, or the concealment of a matter of fact, material to the transaction, made falsely; (2) knowledge that the representation is false or statements made with reckless disregard of the truth; (3) made with the intent to mislead another into relying on the representation; (4) actual and justifiable reliance upon the representation by such other party without knowledge of its falsity; and (5) with injury or prejudice resulting from such reliance. 12 S. Williston sec. 1487A, p. 330 (3d ed. 1970). *593 The doctrine of equitable estoppel generally applies where a taxpayer makes a representation of fact on which the Commissioner relies to his detriment, and, through such reliance and his ignorance of the true facts, is induced not to correct the error before its correction is barred by the running of the statute of limitations. Sangers Home for Chronic Patients v. Commissioner,72 T.C. 105, 114 (1979). "The object of * * * estoppel is to repress fraud and render men truthful in the dealings with each other." Tide Water Oil Co. v. Commissioner,29 B.T.A. 1208, 1224 (1934). The elements required for application of estoppel are as follows: (1) conduct amounting to a misrepresentation or concealment of a material fact; (2) actual or imputed knowledge of the misrepresentation by the party to be estopped; (3) absence of knowledge of facts by the party in whose favor estoppel is applied; (4) intention or expectation of the party to be estopped that the representation or concealment will be acted upon by the other party; (5) reliance by the party seeking estoppel; and (6) detriment to the party seeking the estoppel resulting from his reliance. *594 [5]
Sangers Home for Chronic Patients v. Commissioner,72 T.C. at 115. Cf. Piarulle v. Commissioner,80 T.C. 1035, 1044 (1983). Petitioners argue that they did not attempt to mislead, misrepresent, or conceal any fact to respondent by preparing, signing, and mailing Form 872M to the IRS. To support their contention they rely on Schenk v. Commissioner,T.C. Memo. 1976-363; Herschler v. Commissioner,T.C. Memo. 1984-569; and Schwotzer v. Commissioner,T.C. Memo. 1986-161. Respondent contends that the entire Form 872M is a false representation and that petitioners' intent, based upon all the facts and circumstances surrounding its creation, was to mislead the government into believing that Form 872M was in fact Form 872A. Alternatively, respondent contends that Dr. Huene's conduct after his creation and submission of Form 872M constitutes a "wrongful misleading silence" or concealment of a material fact. In *595 support of his contentions respondent relies primarily upon Herschler v. Commissioner,supra, and the dicta in Cary v. Commissioner,48 T.C. 754 (1967). Petitioners first direct our attention to Schenk v. Commissioner,T.C. Memo. 1976-363, and would have us believe that Schenk stands for the proposition that since the manner in which taxpayer Schenk altered the Form 872A did not constitute an intent to mislead the government, then here, since petitioner did not alter Form 872A but rather created a new form, his actions should not constitute an intent to mislead either. We disagree. The facts and circumstances in Schenk are different and distinguishable from those in this case and, therefore, we are not bound to follow the result we reached in Schenk.
In Schenk, the taxpayer altered a 1971 Form 872A by erasing the "9" in the "90th day" and typing a zero in its place, thereby changing all copies of Form 872A to read in pertinent part, as follows: That the amount(s) of any Federal income tax due under any return(s) made by or on behalf of the above-named taxpayer(s) for the year(s) ended. December 31, 1969 and *596 December 31, 1970 under existing or prior revenue acts, may be assessed at any time on or before the 00th day after (1) the mailing by the Internal Revenue Service of written notification. Taxpayer Schenk signed and returned the executed, altered Form 872A's to the Appellate Division. He did not advise anyone of the alteration contained therein "because he assumed that if the appellate division would not accept the Form 872A as altered, that it would be returned to him." Schenk v. Commissioner, supra. However, the form was not returned to him, and was in fact subsequently executed in its altered state. Approximately nine months later respondent issued his statutory notice of deficiency and the taxpayer filed a petition in this Court. The issue before this Court in Schenk was whether the statute of limitations barred the assessment, and we held that "under the unusual and particular facts of this case" the period of limitation on assessment barred the Commissioner from issuing his statutory notice of deficiency. In that case the Commissioner had failed to plead estoppel or to offer evidence that the taxpayer in any way attempted to mislead the IRS by his alteration of *597 the form. We said: If we believed that petitioner attempted to mislead the Internal Revenue Service and if the Commissioner had properly pleaded estoppel and carried his burden of proof, the result in this case would probably be otherwise. [Schenk v. Commissioner,35 T.C.M. 1652, 1656, 45 P-H Memo T.C. par. 76; 363 at 76-1632.] Here, respondent did plead estoppel. Moreover, we are convinced that petitioner fully intended to mislead respondent. Petitioner took elaborate, time-consuming steps in order to recreate an almost perfect duplicate of Form 872A, including the purchase of a special Daisy wheel. Form 872M's visual style matched that of the Form 872A almost perfectly. Although there were some minor differences, i.e., the number of asterisks and the texture of paper used, for all intents and purposes Form 872M looks so much like Form 872A that only intense scrutiny of the form would have revealed that the language in the second sentence of the first paragraph was different from that contained in Form 872A. If petitioner had not intended to deceive or mislead respondent's agent into believing that he was signing Form 872A, he would not have gone *598 to such elaborate measures, especially since he was such a poor typist. Instead he might have typed his own form with regular print, without all the official government numbers and names, or he could have crossed through the second sentence, initialed it, and attached his own typewritten or handwritten version to Form 872A. Our decision in this case is supported by Herschler v. Commissioner,T.C. Memo. 1984-569. There the taxpayer received a computer-generated Form 872. The date to which the period was to be extended was set forth at the top of each page and once in the text. The taxpayer instructed his wife to modify the date from December 31, 1981, to December 31, 1980, in the text of each form by use of a typewriter. The alteration of the date in the text only was carefully made by typing in an "0" in lieu of a "1" in the original date of December 31, 1981. The taxpayer did not initial either of the alterations or otherwise call attention to them. He did not modify the dates that appeared at the top of both pages of each form, which continued to state that the statute of limitations would be extended to December 31, 1981. No change was made in either consent *599 in the clause "the time for assessing the tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days" if a notice of deficiency is sent on or before the extended limitations date. The taxpayer signed the forms on the signature line which was three lines below the December 31, 1981, date on the second page of the form. The revenue agent in charge of monitoring impending expiration of statute of limitations for assessments did not notice that, in the text of page one of each of the Forms 872, the taxpayer had altered the date to which the statute of limitations was extended to read December 31, 1980, while leaving the original date of December 31, 1981, unchanged at the top of each of the two pages of both Forms 872. Instead the agent assumed that the statute of limitations was extended to December 31, 1981, and relied upon that assumption in failing to issue a timely statutory notice of deficiency. We concluded that upon examination of the entire record, the taxpayer's careful correction of only one date without changing the date at the top of the two pages was a wrongful misleading silence done so that he could make the argument *600 that the statute had run as to certain years if the Commissioner relied on the date at the top of each page. We further concluded that the typewriter alterations were so subtle that it was obvious that they would be difficult to detect without extensive scrutiny. Here, petitioners argue that their case is clearly distinguishable from Herschler since the taxpayer in Herschler actually altered a consent, while here, they merely created a new one, and therefore, Herschler is not applicable. In view of the lengths to which petitioner herein went to replicate the appearance of Form 872A, this is a distinction without a difference. Petitioners further contend that their act of initialing the paragraph containing the $50.00 limitation serves to negate any inference of intent to mislead the government. Here, however, the initials were an additional means of deception, since they appear not beside the new material but instead between 5 to 7 lines away from the changes. Moreover, petitioners did not initial the "M," which, had they done so, might have put the IRS on notice that the form was not Form 872A. Dr. Huene also testified that the reason he placed the *601 $50.00 limitation in his document was to get the IRS's attention so that they would call him and ask him what he really wanted. The short answer to this is, we do not believe it. [6]
Moreover, even if we did not conclude that petitioner's intent, surrounding the creation of Form 872M, was to mislead the government, we would find his conduct, after receipt of the executed Form 872M, to constitute concealment or wrongful misleading silence concerning a mistake that he knew had occurred upon the part of the government. Generally, there is a duty imposed upon the maker of a document to disclose the falsity of a misrepresentation, which when made not have been made for the purpose of its being acted upon, if he subsequently ascertains that the other party is about to act in reliance upon it. 12 S. Williston, Contracts, sec. 1497, p. 380 (3d ed. 1970). "If a fact is known by one party to a transaction and not the other, and that fact is so vital *602 that if the mistake were mutual, the contract would be voidable, and the party knowing the fact also knows that the other does not know it, non-disclosure is not privileged and is fraudulent." 12 Williston, Contracts, supra.
Here, Dr. Huene testified that he did not really believe that the I.R.S. would sign Form 872M because of the $50.00 limitation on liability. However, he further testified that he did not look at the cover letter when he received the executed copy of Form 872M but, rather, filed it with the Form 872M. This is preposterous, in light of the fact that he knew that his potential liability could be in excess of $100,000, based upon his 1977 deficiency. We think he carefully read the cover letter and knew, at that point, that the government was under the mistaken belief that it had executed an unrestricted Form 872A. Therefore, we find his failure to alert the government to the mistake to constitute a wrongful misleading silence or concealment of a material fact. The dicta in Cary v. Commissioner,48 T.C. 754, 765 (1967), support this result. The evidence also makes clear that respondent's agents did not know nor did they have reason to know *603 (1) that petitioners had created a new consent Form 872M limiting their liability to $50.00, or (2) that they were signing Form 872M instead of Form 872A. We note: (1) Form 872A is a form created by the IRS; (2) the agents who work with these forms know what the forms look like and can readily distinguish them from other consent forms they handle; (3) Form 872M, upon visual inspection, looked so much like Form 872A that we find it reasonable that respondent's agents would not have been put on notice that it was not Form 872A; (3) there were no visual deletions or cross-outs or insertions made to the face of the form except the initials placed in the left-hand margin of the form, several lines above the change; (4) the form contained the digits "121581-0918" that informed the agents that the form was their form; (5) although the paper upon which Form 872M was printed was not computer paper, and, therefore, had a different texture than computer-generated Forms 872A, the difference in texture is insufficient to place a reasonable person on notice that the form was not a Form 872A. This is true especially in light of the fact that photostat copies of Form 872A's were often made and handled *604 in the review process; (6) since no initials were placed beside the "M" nothing else would have alerted respondent's agents to verify the form number. This is especially true since the office was processing only Forms 872A and would not otherwise have a reason to verify the form's number; (7) the first paragraph on Form 872M contained the same number of lines as did Form 872A; (8) there were no new paragraphs contained on the face of the document (Form 872A has four paragraphs as does Form 872M); (9) Dr. Huene intended to make his first paragraph of Form 872M look "similar" to that of Form 872A so that his changes would not be easily noticed; (10) Dr. Huene even placed the "(S)" after the word taxpayer in his Form 872M so that respondent's agents would not otherwise be put on notice that something was different about the form; (11) Ms. Gaughan has never seen a taxpayer-created form, such as Form 872M, in the three years she has worked in the San Francisco office; and (12) all other forms with the number 872 are not computer-generated and as such have a different appearance than the Forms 872A's. We agree with respondent that "Dr. Huene wanted 'Form 872M' to be so much like Form *605 872A that no one in the government would notice the difference and yet, at the same time, Dr. Huene wanted something 'different' so that he could argue that the government should have noticed that this was not a Form 872A." Although we generally agree with the proposition that respondent bears the risk of any defect in the document upon which he relies as a waiver, we do not believe that the facts herein warrant such a conclusion. Respondent should not be required to read his own forms word for word in order to protect himself from subtle changes made thereto by taxpayers. One of the purposes of standardizing documents is to eliminate the need for the creating party to have to read every word contained therein, so that time and skill can be devoted to a class of transactions rather than to details of individual transactions. Restatement, Contracts 2d, sec. 211 (comment a) (1981). It also serves to eliminate bargaining over details of individual transactions. Restatement, Contracts 2d, sec. 211 (Comment b) (1981). In most cases where we have held respondent bound by the terms written by taxpayers, we have also found that, as written, the alterations were so clearly visible that *606 respondent was in essence negligent not to have seen them. See Estate of Taft v. Commissioner,T.C. Memo. 1989-427. Here, however, respondent's agents were not negligent in performance of their duties. Respondent has sufficiently proved that his agents had no knowledge, either actual or constructive, that the form signed was not unrestricted Form 872A. The final element for our decision is whether respondent was injured or adversely affected as a result of his reliance on the fact that Form 872M was misrepresented to him as Form 872A. It is clear from the evidence that respondent relied to his detriment on the reasonable assumption that the form executed by both parties was a valid unrestricted Form 872A. Had Form 872M not been deliberately created to look so much like Form 872A respondent could have either served an additional consent or immediately determined his deficiency against petitioners. However, as a result of his reliance, respondent is either limited to a deficiency of $50.00, if we find the form valid, or precluded from assessing his deficiency, if any, altogether, if we find Form 872M invalid. Therefore we find that respondent has been injured *607 as a result of petitioners' conduct. Since we find all the elements necessary for fraud, we hold Form 872A invalid to extend the statute of limitations. However, petitioners will not be permitted to assert this defense, for the following reasons: (1) Petitioners made a material misrepresentation of fact; (2) petitioners knew that the IRS would mistakenly believe that Form 872M was their Form 872A; (3) Form 872M was made with the intent to induce respondent's agents to execute the ersatz form; (4) through no negligence of his own, respondent did not in fact know that the form submitted by petitioners was not his own Form 872A; (5) as a result thereof he executed it; and (6) respondent relied upon it to his detriment. Based upon the foregoing, we find petitioners estopped to raise the statute of limitations as an affirmative defense and we hold accordingly. Decision will be entered under Rule 155.
APPENDIX A-1 FORM 872M DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE SPECIAL CONSENT TO EXTEND THE TIME TO ASSESS TAX (FOR THE PERIOD ENDED DECEMBER 31, 1978) IN REPLY REFER TO: PROJECTS 121581-0918 DONALD R HUENE & ANNETTE S HUENE, TAXPAYER(S) OF 7429 N VALENTINE, *608 FRESNO, CA AND THE DISTRICT DIRECTOR OF INTERNAL REVENUE OR REGIONAL DIRECTOR OF APPEALS CONSENT AND AGREE TO THE FOLLOWING: (1) THE AMOUNT OF ANY FEDERAL INCOME TAX DUE ON ANY RETURN(S) MADE BY OR FOR THE ABOVE TAXPAYER(S) FOR THE PERIOD ENDING DECEMBER 31, 1978, MAY BE ASSESSED ON OR BEFORE THE 90TH (NINETIETH) DAY AFTER: (A) THE INTERNAL REVENUE SERVICE OFFICE CONSIDERING THE CASE RECEIVES FORM 872-T, NOTICE OF TERMINATION OF SPECIAL CONSENT TO EXTEND THE TIME TO ASSESS TAX, FROM THE TAXPAYER(S), OR (B) THE INTERNAL REVENUE SERVICE MAILS FORM 872-T TO THE TAXPAYER(S), OR (C) THE INTERNAL REVENUE SERVICE MAILS A NOTICE OF DEFICIENCY FOR SUCH PERIOD(S). HOWEVER, WHEN A NOTICE OF DEFICIENCY IS SENT TO THE TAXPAYER(S), THE TOTAL AMOUNT OF DEFICIENCY THAT CAN BE ASSESSED OR COLLECTED FROM TAXPAYER(S) SHALL BE THE AMOUNT OF THE DETERMINED DEFICIENCY OR THE SUM OF FIFTY DOLLARS, WHICHEVER IS THE LESSER AMOUNT. A FINAL ADVERSE DETERMINATION SUBJECT TO DECLARATORY JUDGMENT UNDER SECTIONS 7428, 7476, or 7477 OF THE INTERNAL REVENUE CODE WILL NOT TERMINATE THIS AGREEMENT. (2) THIS AGREEMENT ENDS ON THE EARLIER OF THE ABOVE EXPIRATION DATE OR THE ASSESSMENT DATE OF AN INCREASE IN THE *609 ABOVE TAX THAT REFLECTS THE FINAL DETERMINATION OF TAX AND THE FINAL ADMINISTRATIVE APPEALS CONSIDERATION. AN ASSESSMENT FOR ONE PERIOD COVERED BY THIS AGREEMENT WILL NOT END THIS AGREEMENT FOR ANY OTHER PERIOD IT COVERS. SOME ASSESSMENTS DO NOT REFLECT A FINAL DETERMINATION AND APPEALS CONSIDERATION AND THEREFORE WILL NOT TERMINATE THE AGREEMENT BEFORE THE EXPIRATION DATE. EXAMPLES ARE ASSESSMENTS OF: (A) TAX UNDER A PARTIAL AGREEMENT, (B) TAX IN JEOPARDY, (C) TAX TO CORRECT MATHEMATICAL OR CLERICAL ERRORS, (D) TAX REPORTED ON AMENDED RETURNS, AND (E) ADVANCE PAYMENTS. IN ADDITION, UNASSESSED PAYMENTS, SUCH AS AMOUNTS TREATED BY THE SERVICE AS CASH BONDS AND ADVANCE PAYMENTS NOT ASSESSED BY THE SERVICE, WILL NOT TERMINATE THIS AGREEMENT BEFORE THE EXPIRATION. THIS AGREEMENT ENDS ON THE DATE DETERMINED IN (1) ABOVE REGARDLESS OF ANY ASSESSMENT FOR ANY PERIOD INCLUDIBLE IN A REPORT TO THE JOINT COMMITTEE ON TAXATION SUBMITTED UNDER SECTION 6405 OF THE INTERNAL REVENUE CODE. (3) THIS AGREEMENT WILL NOT REDUCE THE PERIOD OF TIME OTHERWISE PROVIDED BY LAW FOR MAKING SUCH ASSESSMENT. (4) THE TAXPAYER(S) MAY FILE A CLAIM FOR CREDIT OR REFUND AND THE SERVICE MAY CREDIT OR REFUND *610 THE TAX WITHIN 6 (SIX) MONTHS AFTER THIS AGREEMENT ENDS. MAKING THIS CONSENT WILL NOT DEPRIVE THE TAXPAYER(S) OF AN APPEAL RIGHTS TO WHICH THEY WOULD OTHERWISE BE ENTITLED YOUR SIGNATURE HERE DONALD R HUENE Jan. 4, 1982 SPOUSE'S SIGNATURE ANNETTE S HUENE Jan. 4, 1982 TAXPAYER'S REPRESENTATIVE SIGN HERE (DATE SIGNED) CORPORATE NAME CORPORATE OFFICER(S) SIGN HERE (TITLE) (DATE SIGNED) MICHAEL SASSI DISTRICT DIRECTOR OF INTERNAL REVENUE REGIONAL DIRECTOR OF APPEALS BY [Illegible Words] 15 JAN 1982 INSTRUCTIONS IF THIS CONSENT IS MADE FOR A YEAR FOR WHICH A JOINT RETURN WAS FILED, BOTH HUSBAND AND WIFE MUST SIGN THE ORIGINAL AND COPY OF THIS FORM UNLESS ONE, ACTING UNDER A POWER OF ATTORNEY, SIGNS AS AGENT FOR THE OTHER. THE SIGNATURES MUST MATCH THE NAMES AS THEY APPEAR ON PAGE 1 OF THIS FORM. IF YOU ARE AN ATTORNEY OR AGENT OF THE TAXPAYER(S), YOU MAY SIGN THIS CONSENT PROVIDED THE ACTION IS SPECIFICALLY AUTHORIZED BY A POWER OF ATTORNEY. IF THE POWER OF ATTORNEY WAS NOT PREVIOUSLY FILED, PLEASE INCLUDE IT WITH THIS FORM. IF YOU ARE ACTING AS A FIDUCIARY (SUCH AS EXECUTOR, ADMINISTRATOR, TRUSTEE, ETC.) AND YOU SIGN THIS CONSENT, ATTACH *611 FORM 56, NOTICE OF FIDUCIARY RELATIONSHIP, UNLESS IT WAS PREVIOUSLY FILED. IF THE TAXPAYER IS A CORPORATION, SIGN THIS CONSENT WITH THE CORPORATE NAME FOLLOWED BY THE SIGNATURE AND TITLE OF THE OFFICERS(S) AUTHORIZED TO SIGN. APPENDIX A-1 FORM 872A DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE SPECIAL CONSENT TO EXTEND THE TIME TO ASSESS TAX (FOR THE PERIOD ENDED DECEMBER 31, 1977) IN REPLY REFER TO: PROJECTS 121581-0918 DONALD HUENE, TAXPAYER(S) OF 7429 N VALENTINE FRESNO CA 93711 AND THE DISTRICT DIRECTOR OF INTERNAL REVENUE OR REGIONAL DIRECTOR OF APPEALS CONSENT AND AGREE TO THE FOLLOWING: (1) THE AMOUNT OF ANY FEDERAL INCOME TAX DUE ON ANY RETURN(S) MADE BY OR FOR THE ABOVE TAXPAYER(S) FOR THE PERIOD ENDED DECEMBER 31, 1977, MAY BE ASSESSED ON OR BEFORE THE 90TH (NINETIETH) DAY AFTER: (A) THE INTERNAL REVENUE SERVICE OFFICE CONSIDERING THE CASE RECEIVES FORM 872-T, NOTICE OF TERMINATION OF SPECIAL CONSENT TO EXTEND THE TIME TO ASSESS TAX, FROM THE TAXPAYER(S), OR (B) THE INTERNAL REVENUE SERVICE MAILS FORM 872-T TO THE TAXPAYER(S), OR (C) THE INTERNAL REVENUE SERVICE MAILS A NOTICE OF DEFICIENCY FOR SUCH PERIOD(S). HOWEVER, IF A NOTICE OF DEFICIENCY IS *612 SENT TO THE TAXPAYER(S), THE TIME FOR ASSESSING THE TAX FOR THE PERIOD(S) STATED IN THE NOTICE OF DEFICIENCY WILL BE FURTHER EXTENDED BY THE NUMBER OF DAYS THE ASSESSMENT WAS PREVIOUSLY PROHIBITED, PLUS 60 DAYS. A FINAL ADVERSE DETERMINATION SUBJECT TO DECLARATORY JUDGMENT UNDER SECTIONS 7428, 7476, OR 7477 OF THE INTERNAL REVENUE CODE WILL NOT TERMINATE THIS AGREEMENT. (2) THIS AGREEMENT ENDS ON THE EARLIER OF THE ABOVE EXPIRATION DATE OR THE ASSESSMENT DATE OF AN INCREASE IN THE ABOVE TAX THAT REFLECTS THE FINAL DETERMINATION OF TAX AND THE FINAL ADMINISTRATIVE APPEALS CONSIDERATION. AN ASSESSMENT FOR ONE PERIOD COVERED BY THIS AGREEMENT WILL NOT END THIS AGREEMENT FOR ANY OTHER PERIOD IT COVERS. SOME ASSESSMENTS DO NOT REFLECT A FINAL DETERMINATION AND APPEALS CONSIDERATION AND THEREFORE WILL NOT TERMINATE THE AGREEMENT BEFORE THE EXPIRATION DATE. EXAMPLES ARE ASSESSMENTS OF: (A) TAX UNDER A PARTIAL AGREEMENT, (B) TAX IN JEOPARDY, (C) TAX TO CORRECT MATHEMATICAL OR CLEARICAL ERRORS, (D) TAX REPORTED ON AMENDED RETURNS, AND (E) ADVANCE PAYMENTS. IN ADDITION, UNASSESSED PAYMENTS, SUCH AS AMOUNTS TREATED BY THE SERVICE AS CASH BONDS AND ADVANCE PAYMENTS NOT ASSESSED BY THE SERVICE, *613 WILL NOT TERMINATE THIS AGREEMENT BEFORE THE EXPIRATION. THIS AGREEMENT ENDS ON THE DATE DETERMINED IN (1) ABOVE REGARDLESS OF ANY ASSESSMENT FOR ANY PERIOD INCLUDIBLE IN A REPORT TO THE JOINT COMMITTEE ON TAXATION SUBMITTED UNDER SECTION 6405 OF THE INTERNAL REVENUE CODE. (3) THIS AGREEMENT WILL NOT REDUCE THE PERIOD OF TIME OTHERWISE PROVIDED BY LAW FOR MAKING SUCH ASSESSMENT. (4) THE TAXPAYER(S) MAY FILE A CLAIM FOR CREDIT OR REFUND AND THE SERVICE MAY CREDIT OR REFUND THE TAX WITHIN 6 (SIX) MONTHS AFTER THIS AGREEMENT ENDS. MAKING THIS CONSENT WILL NOT DEPRIVE THE TAXPAYER(S) OF ANY APPEAL RIGHTS TO WHICH THEY WOULD OTHERWISE BE ENTITLED. YOUR SIGNATURE HERE DONALD HUENE (DATE SIGNED) SPOUSE'S SIGNATURE (DATE SIGNED) TAXPAYER'S REPRESENTATIVE SIGN HERE (DATE SIGNED) CORPORATE NAME CORPORATE OFFICER(S) SIGN HERE (TITLE) (DATE SIGNED) DISTRICT DIRECTOR OF INTERNAL REVENUE REGIONAL DIRECTOR OF APPEALS BY (SIGNATURE AND TITLE) (DATE SIGNED) INSTRUCTIONS IF THIS CONSENT IS MADE FOR A YEAR FOR WHICH A JOINT RETURN WAS FILED, BOTH HUSBAND AND WIFE MUST SIGN THE ORIGINAL AND COPY OF THIS FORM UNLESS ONE, ACTING UNDER A POWER OF ATTORNEY, SIGNS AS *614 AGENT FOR THE OTHER. THE SIGNATURES MUST MATCH THE NAMES AS THEY APPEAR ON PAGE 1 OF THIS FORM. IF YOU ARE AN ATTORNEY OR AGENT OF THE TAXPAYER(S), YOU MAY SIGN THIS CONSENT PROVIDED THE ACTION IS SPECIFICALLY AUTHORIZED BY A POWER OF ATTORNEY. IF THE POWER OF ATTORNEY WAS NOT PREVIOUSLY FILED, PLEASE INCLUDE IT WITH THIS FORM. IF YOU ARE ACTING AS A FIDUCIARY (SUCH AS EXECUTOR, ADMINISTRATOR, TRUSTEE, ETC.) AND YOU SIGN THIS CONSENT, ATTACH FORM 56, NOTICE OF FIDUCIARY RELATIONSHIP, UNLESS IT WAS PREVIOUSLY FILED. IF THE TAXPAYER IS A CORPORATION, SIGN THIS CONSENT WITH THE CORPORATE NAME FOLLOWED BY THE SIGNATURE AND TITLE OF THE OFFICERS(S) AUTHORIZED TO SIGN. APPENDIX B Date: 15 JAN 1982 Enclosed is a copy of the above consent for your records. It extends to the date shown the time in which we may assess tax for this period. If you have any questions, please contact the person whose name and telephone number are shown above. Sincerely yours, [Illegible Words], District Director Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for 1978, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Hereinafter, the terms petitioner and petitioner's refer to Dr. Huene since Mrs. Huene did not actively participate in the creation of Form 872M.↩
3. Fraud means: (a) misrepresentation known to be such, or (b) concealment, or (c) non-disclosure where it is not privileged, by any person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction. [12 S. Williston, Contracts sec. 1487 (3d ed. 1970); see 12 S. Williston, Contracts sec. 1497 (3d ed. 1970).] ↩
4. A distinction must be made between an innocent misrepresentation and one which is not innocent. If a person's mistake is induced by an innocent misrepresentation, the misrepresentation must be material in order for it to rise to the level of fraud. However, materiality is not essential if a mistake induced by fraud produces the intended consequences. 12 S. Williston, Contracts, sec. 1490, p. 345 (3d ed. 1970).↩
5. Although there are six elements listed above for estoppel, and only five for fraud, it should be noted that elements (3) - (5) of above are combined in the (4) element of fraud.↩
6. Petitioners next rely upon our decision in Schwotzer v. Commissioner,T.C. Memo. 1986-161↩. However, in an Order dated July 17, 1986, we vacated that decision and, therefore, we give no further discussion of it herein.